WO

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | ) |
| Plaintiff, | ) |
| | ) CR 11-098 TUC DCB (DTF) |
| v. | ) |
| | ) **O R D E R** |
| Manuel Plaza-Leon, | ) |
| Defendant, | ) |

The Court accepts and adopts the Magistrate Judge's Report and Recommendation (R&R) (Doc 31) as the findings of fact and conclusions of law of this Court and denies Defendant's Motion to Suppress Evidence (Doc 15).

**MAGISTRATE JUDGE'S RECOMMENDATION**

On June 15, 2011, Magistrate Judge D. Thomas Ferraro issued a R&R, recommending that the Court deny the Defendant's Motion to Suppress Evidence as fruit of an alleged unlawful detention and for *Miranda* violations.

Magistrate Judge Ferraro found no violation of the Fourth Amendment for three reasons: 1) police are permitted to approach individuals in public places and ask questions; 2) the fact that the arresting officer labeled a DVD recording of the incident as "3-Hispanic males" does not demonstrate by a preponderance of the evidence that the Defendant was approached solely because of his race because Officer Yebra articulated legitimate reasons for the contact and arrest of the Defendant; 3) a criminal defendant cannot suppress his identity, (R&R at 3-5), and 4) the Defendant's fingerprints are admissible because they were obtained to establish his identity, not as part of a criminal investigation, (R&R at 5-6).

The Magistrate Judge found no Fifth Amendment violation of the right against self-incrimination because the alleged offensive police conduct did not produce evidence of Defendant's identity. Instead, the Defendant responded with a false alias "and, as such, the 'fruits' of the identification evidence are non-existent rather than poisonous," (R&R at 5.)

The parties were sent copies of the R&R and instructed that, pursuant to 28 U.S.C. § 636(b)(1), they had 14 days to file written objections. *See also,* Fed. R. Cr. P. 59(b) (party objecting to the recommended disposition has fourteen (14) days to file specific, written objections).

## **STANDARD OF REVIEW AND CONCLUSION**

The duties of the district court in connection with a R&R are set forth in Rule 59 of the Federal Rules of Criminal Procedure and 28 U.S.C. § 636(b)(1). The district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Fed. R. Crim. P. 59(b)(3); 28 U.S.C. § 636(b)(1). "The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b); *see also* Fed. R. Crim. P. 59(b)(3).

Where the parties object to a R&R, "[a] judge of the [district] court shall make a *de novo* determination of those portions of the [R&R] to which objection is made." 28 U.S.C. § 636(b)(1); *Thomas v. Arn,* 474 U.S. 140, 149-50 (1985). When no objection is filed, the district court need not review the R&R *de novo*. *Wang v. Masaitis,* 416 F.3d 992, 1000 n. 13 (9th Cir. 2005); *United States v. Reyna-Tapia,* 328 F.3d 1114, 1121-22 (9th Cir. 2003) (en banc). Therefore, to the extent that no objection has been made, arguments to the contrary have been waived. *McCall v. Andrus*, 628 F.2d 1185, 1187 (9th Cir. 1980) (failure to object to Magistrate's report waives right to do so on appeal); *see also*, Advisory Committee Notes to Fed. R. Civ. P. 72 (citing *Campbell v. United States Dist. Court*, 501 F.2d 196, 206 (9th Cir. 1974) (when no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation).

The only objection to the R&R was filed by the Defendant. He objects to the Magistrate Judge's conclusions that the initial stop and questioning of the Defendant was not purely race

based, and his fingerprints were taken to establish identity, not to investigate whether he was illegally in the United States.

The Court has considered the objections filed by the Defendant, the Government's Response, and the parties' briefs considered by the Magistrate Judge on the Motion to Suppress in respect to the Defendant's objections.

## **OBJECTIONS**[1]

### **The Relevant Facts**

"In order to satisfy the Fourth Amendment strictures, an investigatory stop or seizure may only be made if the officer in question has 'a reasonable suspicion supported by articulable facts that criminal activity may be afoot . . . .' *United States v. Sokolow,* 490 U.S. 1, 7 (1989) (internal quotation omitted) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). Reasonable suspicion exists if, in the totality of circumstances, 'an officer is aware of specific articulable facts, that, together with rational inferences drawn from them, reasonably warrant a suspicion that the person to be detained has committed or is about to commit a crime.' *United States v. Salinas*, 940 F.2d 392, 394 (9th Cir. 1991) (citing *United States v. Cortez,* 449 U.S. 411, 416-418 (1981))." (Motion to Suppress at 4.)

The facts relevant to the Defendant's objections follow. On December 16, 2010, Officer Yebra, with the Tohono O'odham Police, was working the midnight shift (11 p.m. to 7 a.m.)

---

[1] Recognizing that 28 U.S.C. § 636(b)(1) makes it clear the district judge must review the R&R *de novo* only "if objection is made, but not otherwise," the Defendant asserts he, therefore, "objects to the report and recommendation in its entirety and request de novo review of the record and evidence." (Objection at 2.) This does not suffice to invoke *de novo* review. "The filing of objections to a magistrate's report enables the district judge to focus attention on those issues-factual and legal-that are at the heart of the parties' dispute." *Thomas*, 474 U.S. at 147. Precluding review of any issue not contained in an objection, prevents a litigant from "sandbagging" the district judge by failing to object and then appealing. "Absent such a rule, any issue before the magistrate would be a proper subject for appellate review." Without the rule requiring parties to object, the district court would have to review every issue in every case, no matter how thorough the magistrate's analysis. The rule promotes the efficient use of judicial resources. *Id.* It is not enough for a party to file what is essentially a notice of objection. Accordingly, the Court reviews *de novo* only the arguments actually raised and discussed in the memorandum filed in objection to the R&R and reviews *de novo* the record before the Magistrate Judge that pertain to such objections. All other objections are waived.

patrolling the San Xavier district. His duties included checking the Desert Diamond Casino for criminal activity. He testified that early in the course of his shift, he noticed a man, Perez, who seemed confused or maybe lost. Officer Yebra stopped Perez and asked if he needed assistance. Perez told Officer Yebra that he was looking for a friend. Officer Yebra directed Perez to another man, Garcia, who was on the other side of the casino and who Officer Yebra believed might be Perez' friend because the two men were similarly dressed. (R&R at 2-13.)

Officer Yebra observed Perez and Garcia together, off and on, during the course of his shift. Their conduct was suspicious because they were not gambling. Panhandling and pick-pocketing are illegal activities that occur at the casino, and Officer Yebra was concerned the two might be looking for an opportunity to commit such crimes because they were just walking around. *Id.*

Towards the end of his shift, Officer Yebra saw Perez stop a patron and engage him in what Officer Yebra believed to be panhandling. At that point Officer Yebra approached Perez and asked him for identification. Perez had none and admitted to being in the United States illegally. Approximately 60 feet away, Officer Yebra saw Garcia and Defendant Plaza-Leon, together. Defendant was gambling, and Garcia was watching him. They were talking and appeared to be acquaintances. Officer Yebra approached Garcia and asked for his identification. Like Perez, Garcia had none and admitted to being in the United States illegally. *Id.*; (TR at 17.)

During the questioning of Garcia, Defendant moved away to another slot machine and appeared tense. (TR at 21.) Officer Yebra asked the Defendant if he knew Garcia and Perez, and the Defendant replied he had just met them. (TR at 24.) Officer Yebra asked for Defendant's identification. The Defendant said he had a work visa, but had left it at home. Defendant gave Officer Yebra a false name and date of birth. Officer Yebra was unable to identify the Defendant, and called border patrol to verify Defendant's work visa status. (R&R at 37.) It is undisputed that Officer Yebra described the Defendant, Garcia and Perez as "Hispanic males" in his police reports on the incident and that he captioned a DVD video recording of his "interrogation" of the Defendant as "3-Hispanic males."

Border Patrol Agent Pang responded and processed Defendant as an administrative immigration matter and determined he was a national of Mexico without documents allowing him to be in the country legally. (RT 78.) Agent Pang testified that processing is always done in the first instance administratively. (TR at 84.) Agent Pang completed a field processing form for a civil immigration violation (Form 826), which informed Defendant of his administrative rights, some of which are similar to rights under *Miranda*. (TR at 81, 83-84.) Agent Pang then transported Defendant to the Tucson Coordination Center (TCC) for processing by other agents. (RT 80-81.) It is undisputed that the Defendant was fingerprinted at TCC, without ever being advised of his *Miranda* rights.

At some point before Agent Pang arrived, Officer Yebra placed the Defendant in handcuffs because he looked nervous, and Officer Yebra believed he might try to flee. (TR at 38.) Officer Yebra did not read Defendant his *Miranda* rights. Agent Pang did not read Defendant his *Miranda* rights.

The Government does not dispute that statements made by the Defendant after he was handcuffed are inadmissible because of the *Miranda* violation. See (R&R at 3 n.3) (reporting "the Government conceded at oral argument that Defendant's post-detention, pre-*Miranda* statements to Officer Yebra and Border Patrol Agent Pang are inadmissible.") Consequently, the parties remain at odds regarding the admissibility of the Defendant's initial response to Officer Yebra falsely identifying himself and the fingerprint evidence.

The Court agrees with the Magistrate Judge that the false statements made by the Defendant in response to Officer Yebra's initial contact question asking to see his identification produced no "fruits" from identification evidence. (R&R at 5.) Additionally, the Defendant admits the Fourth Amendment applied when the Defendant was handcuffed, not at the time of the initial contact when Officer Yebra asked him for identification and he responded falsely. (TR at 90-94.)

The admissibility of the fingerprint evidence hinges on Defendant's assertion that there was no probable cause for Officer Yebra to handcuff him on the floor of the casino because "[t]he record is absolutely devoid of any reason to suspect Plaza-Leon of any wrongdoing

whatsoever." (Objection at 8.) Defendant asserts he was merely present in a place where criminal activity was suspected, which is not sufficient nor is mere association with suspects sufficient for a seizure or arrest. The record is not, however, devoid of any reason for Officer Yebra to suspect the Defendant of wrongdoing. The Defendant told Officer Yebra he did not have his work visa with him, and gave Officer Yebra a false name and date of birth. Officer Yebra had "a reasonable suspicion supported by articulable facts that criminal activity may have been afoot" at the point in time he placed the Defendant in custody to determine his identity because he knew facts suggesting the Defendant was in the country illegally or may have been lying about his identity. Therefore, there was probable cause to place the Defendant in custody.

"Identity evidence is generally not subject to the exclusionary rule." (Objection at 7) (citations omitted), (R&R at 5) (citations omitted). Only an egregious violation of the Fourth Amendment, such as a race based stop, can make the exclusionary rule apply to identity evidence. (Objection at 7) (citations omitted). Because the Court rejects the Defendant's argument that such an egregious violation of the Fourth Amendment occurred in this case, the exclusionary rule does not apply to evidence of Defendant's identity including his fingerprints.

The Court rejects the Defendant's argument that fingerprints in an immigration inspection "are taken to *investigate* one's immigration history as well as to establish an individual's identity. This hybrid purpose for taking an exemplar often results in the criminal prosecution of the individual, as is the case here." (Objection at 10) (emphasis in original). The Defendant's argument would apply in every case because any immigration inspection can be described as maybe going either way – a civil immigration violation or criminal violation. Defendant's position would essentially make fingerprint evidence investigatory instead of identity evidence in every immigration case. This is contrary to Agent Pang's testimony that "when he went out to the casino he approached it as an administrative immigration matter, (RT 82), and that processing is always done in the first instance administratively, (TR at 84).

The Court agrees with the Magistrate Judge. "The fact that Defendant was later charged with a criminal violation was merely a byproduct of the discovery of his true identity and *history*, but was not the intended purpose of the fingerprinting." (R&R at 6) (emphasis added).

*Id.* The Court notes that it is criminal history, not the person's identity, that leads to a criminal prosecution instead of civil removal. The Court finds that under the Fourth Amendment, the fingerprint evidence, like the other identity evidence in this case, is not subject to suppression.

The Defendant also argues the fingerprint evidence should be suppressed because it was taken in violation of *Miranda*. For *Miranda* to apply the Defendant must have been questioned with investigative intent. *United States v. Rodriguez*, 356 F.3d 254, 259 (2nd Cir. 2004). Because the Court finds the fingerprints were not taken for investigative reasons, but only to identify the Defendant, a *Miranda* warning was not required prior to fingerprinting the Defendant.

## **CONCLUSION**

After *de novo* review of the issues raised in the Defendant's objections, this Court agrees with the findings of fact and conclusions of law made by the Magistrate Judge in the R&R for determining the pending Motion to Suppress. The Court adopts it, and for the reasons stated in the R&R, the Court denies Defendant's Motion to Suppress Evidence.

**Accordingly,**

**IT IS ORDERED** that after a full and independent review of the record, in respect to the Defendant's objections, the Magistrate Judge's Report and Recommendation (Doc. 31) is accepted and adopted as the findings of fact and conclusions of law of this Court.

**IT IS FURTHER ORDERED** that Defendant's Motion to Suppress (Doc. 15) is DENIED, except to the extent the Government has agreed to suppression of all statements made by the Defendant after he was taken into custody until after he was advised of his rights under *Miranda*.

**IT IS FURTHER ORDERED** that this matter remains referred to Magistrate Judge D. Thomas Ferraro for all pretrial proceedings and Report and Recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) and the Rules of Practice for the United States District Court, District of Arizona (Local Rules), Rule (Criminal) 58.2.

DATED this 8th day of August, 2011.

David C. Bury
United States District Judge